[Cite as *State v. Heggem*, 2018-Ohio-1423.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27614 |
| | : | |
| v. | : | Trial Court Case No. 15-CR-3677 |
| | : | |
| JERRY D. HEGGEM | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 13th day of April, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, 120 W. Second Street, 400 Liberty Tower, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Jerry Heggem appeals from his conviction and sentence following a jury trial on one count of aggravated drug possession, a fifth-degree felony.

{¶ 2} Heggem advances three assignments of error. First, he challenges the legal sufficiency and manifest weight of the evidence to sustain his conviction. Second, he contends the trial court erred in denying him a continuance to locate a material witness. Third, he alleges ineffective assistance of counsel based on his attorney's failure to subpoena the witness.

{¶ 3} At trial, Huber Heights police officer Scott Short testified that he was performing road patrol around 10:30 p.m. on October 5, 2015. While doing so, he conducted a "zip-code search" on his computer to locate area residents with outstanding warrants. The search identified Heggem as having a warrant and provided an address for him. Short met up with another officer, Brian Carr, and together they proceeded to the address. After parking their cruisers nearby, they approached on foot and saw a green Kia Soul parked at the curb in front of the residential address associated with Heggem. The car's dome light was on, the driver's side door was open, and Heggem was standing outside the car but leaning inside the driver's side of the car. The officers made contact with Heggem, who identified himself as "Jerry." While standing near the car, Short observed in plain view a methamphetamine pipe on the driver's side floorboard. He also saw an open container of beer in a cup holder. At that point, Heggem attempted to lean back into the car, but Short stopped him. Short proceeded to handcuff Heggem and place him in a cruiser while the officer confirmed the warrant with a dispatcher.

{¶ 4} Based on the observation of drug paraphernalia in plain view, Carr conducted

a "probable cause search" of the Kia. He found a second methamphetamine pipe under the driver's seat. He also found a "black-snap case" containing three packets of methamphetamine. As Carr discussed what he had found with Short, Heggem's girlfriend, Michelle Shock, exited the residence. Upon seeing Shock, Heggem spontaneously told Carr, "[T]hat's not hers, it's all mine." (Trial Tr. at 306, 322).

{¶ 5} While at the scene, Shock inquired about removing from the car some pool cues and watches that belonged to Heggem. For his part, Heggem acknowledged at the scene that the pool cues and watches were his. In addition, although the Kia was registered to Shock, Carr testified about confirming though police records that Heggem had driven the car on several occasions.

{¶ 6} Following the State's case, defense counsel requested a continuance to locate Shock and to secure her appearance as a witness. Although it was represented that Shock had been subpoenaed by both parties through residential service, she failed to appear to testify. Defense counsel reported being recently told that Shock was in the hospital but counsel was unable to verify the claim. Despite contacting several area hospitals, the prosecutor also was unable to verify the claim about Shock being hospitalized. The prosecutor informed the trial court that a deputy had contacted Shock's parents, who had no knowledge as to her whereabouts and knew nothing about her being hospitalized. After considering the issue, the trial court allowed defense counsel to proffer Shock's anticipated testimony. The trial court then refused to continue the trial any longer. The trial court also noted its inability to issue a material-witness warrant because Shock had been subpoenaed through residential service rather than personal service.

{¶ 7} Based on the evidence presented, the jury found Heggem guilty of

aggravated drug possession as charged in the indictment. The trial court imposed a community-control sanction. This appeal followed.

{¶ 8} In his first assignment of error, Heggem contends his conviction is not supported by legally sufficient evidence and is against the manifest weight of the evidence. Specifically, he claims the State's evidence fails to support a finding that he possessed the methamphetamine found inside the Kia.

{¶ 9} Heggem's entire substantive argument is as follows:

Here, the car was not registered to Heggem—it was registered to his girlfriend Michelle Shock. Further, when officer Scott [Short] approached Heggem he was not even inside the car. Instead he was simply leaning into the car with his feet on the ground. Scott [Short] patted down Hegge[m] and found no contraband. There was no testimony that Heggem handled, threw or even touched the black case (or the other contents in the car).

There was not sufficient evidence to support a conviction and Heggem's convictions [sic] were against the manifest weight of the evidence. Accordingly, his convictions [sic] should be overturned and verdicts [sic] of not guilty should be entered.

(Appellant's brief at 5).

{¶ 10} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist. 2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} With the foregoing standards in mind, we conclude that Heggem's conviction is supported by legally sufficient evidence and is not against the weight of the evidence. The only issue he raises is whether the evidence supports a finding that he possessed the drugs found in the Kia. As set forth above, the record reflects that Heggem admitted to Officer Carr that the drugs were his. Although the vehicle was registered to Heggem's girlfriend, the record also reflects that he drove the car and that other items found inside the car belonged to him. The State's evidence, if believed, undoubtedly is legally sufficient to support a finding that Heggem possessed the drugs at issue. After

reviewing the evidence, we also cannot say the jury clearly lost its way and created a manifest miscarriage of justice in convicting him. The present case is not one in which the evidence weighs heavily against Heggem's conviction. His first assignment of error is overruled.

{¶ 13} In his second assignment of error, Heggem challenges the trial court's denial of a continuance to locate Shock. In support of the continuance request, Heggem's counsel made the following proffer regarding Shock's anticipated testimony:

> * * * I would proffer that if Michelle Shock were called to testify, her testimony would consist of information that she had loaned the Kia Soul in question and this car to another potential—or to another person earlier in the evening. I think about 6 or 7 that evening and that Kia Soul had been returned to her possession at 6309 Harshmanville Road at between 9 and 9:30 that evening. And that Mr. Heggem had not been in the vehicle while the car was in the possession of that third party. And as such, had no knowledge of the contraband that was found in the vehicle.

(Trial Tr. at 348-349).

{¶ 14} After taking a brief recess and giving the parties an opportunity to explain the situation and to ascertain Shock's whereabouts, the trial court denied a continuance, reasoning:

> All right. The Court will deny what is in essence at this point a request for continuance and here's the reason for it:
>
> I've had the proffer. I've listened to the proffer, but at the end of the day, the appropriate way to secure any significant witness is to secure

personal service upon the witness which then allows the Court the ability to issue a material witness warrant. Without personal service, any attempt on my part to issue that kind of a warrant where in essence, the deputies at my behest go and if you will place a witness in custody until they testify is impermissible by law. I do not have that power. So I cannot do anything along those lines.

I understand the proffer that was made and I'm just not in a position. The trial has been a matter of long standing for both sides.

The witness, while she may be a very important witness is not by law a material witness. The information that was imparted about her hospital stay or non-stay suggests to me that it's very unclear what her circumstances are. It's very unclear. It's an open-ended situation. I don't know if she would be available later today, tomorrow, next year.

There's no ability for me in dealing with the good people who are serving us as jurors to give them any indication that the case would, if we waited for Ms. Shock, be completed at any time in the foreseeable future. Which leads the—you know alternative being some kind of a mistrial, which I'm unwilling to grant at this point because I don't see that there's a basis to do so. Particularly, when she has not been served personally and her current situation, other than the fact she has not responded to either the State or the Defense subpoena. Her current situation is a complete unknown to the Court. * * *

(Tr. at 350-352).

{¶ 15} It was after making the foregoing comments that the trial court gave the parties one more opportunity to locate Shock by contacting her parents. Upon learning that Shock's parents knew nothing about her whereabouts, the trial court concluded:

All right. Under those circumstances, I'm just not in a position really to do anything. Absent her attendance of her own accord, I cannot do any more than that. She's not here and I just cannot continue the trial or delay the trial any farther. I probably already exercised—and I mean that in the sense of exercising demons—I probably already exercised whatever patience you know these good people [the jurors] had so we'll proceed as I've outlined.

(*Id.* at 354).

{¶ 16} Whether to grant a continuance is left to the sound discretion of the trial court, and an appellate court may not disturb the trial court's ruling absent an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). In exercising its discretion, a trial court should consider "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which g[a]ve rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." (Citation omitted.) *State v. Bocock*, 2d Dist. Montgomery No. 22481, 2008-Ohio-5641, ¶ 23.

{¶ 17} Although Heggem contends some of the foregoing factors weigh in his favor, we believe the trial court acted within its discretion in refusing to continue the trial.

In reaching this conclusion, we note that the reason for Shock's failure to appear was unknown. There was a claim that she had been hospitalized, but no evidence was presented to support the claim. Given that Shock's whereabouts were unknown, the trial court had no idea if or when she would be located or how long of a continuance would be required. Under these circumstances, the trial court acted reasonably in refusing to inconvenience the jurors by releasing them for an indefinite period of time and continuing the trial. The second assignment of error is overruled.

{¶ 18} In his third assignment of error, Heggem alleges ineffective assistance of counsel based on his attorney's failure to subpoena Shock. Although she had been subpoenaed through residential service, Heggem contends his attorney's failure to perfect personal service constituted ineffective assistance because it deprived the trial court of its ability to issue a material-witness warrant.

{¶ 19} Upon review, we find Heggem's argument to be unpersuasive. To establish ineffective assistance of counsel, an appellant must demonstrate "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 20} Even assuming, arguendo, that defense counsel provided deficient representation by failing to obtain personal service on Shock, we see no reasonable probability that the result would have been different if personal service had been made.

Although personal service would have enabled the trial court to issue a material-witness warrant (*see* R.C. 2317.21), it is unclear whether the warrant would have secured Shock's appearance given that her whereabouts were unknown. In any event, we see no reasonable probability that the result of Heggem's trial would have been different even if Shock had testified. As set forth above, defense counsel proffered that she would testify about loaning her car to someone else earlier in the evening and about Heggem not being in the vehicle when it was in the other person's possession. We believe the part of the proffer as to Shock's belief Heggem had no knowledge of the contraband would not be admissible. Defense counsel suggested that Heggem "had no knowledge of the contraband that was found in the vehicle" (Trial Tr. at 349), but the proffer does not demonstrate how she may have been aware of his knowledge. Moreover, it does not follow that Heggem had no knowledge about the drugs in the car simply because someone else had used the car earlier that evening. This is particularly true in light of Heggem's admission to officer Carr that the drugs were his. Because the admissible proffered testimony would have been unlikely to change the result of Heggem's trial, we see no prejudice resulting from Shock's absence. The third assignment of error is overruled.

{¶ 21} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Michael J. Scarpelli
Lucas W. Wilder

Hon. Michael W. Krumholtz